# Miracle v. New York Underwriters' Insurance Company.

## Same v. Queen Insurance Company.

(Decided December 9, 1931.)

TUGGLE & TUGGLE for appellant.

H. H. HUFFAKER and H. H. OWENS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

On March 3, 1926, the New York Underwriters' Insurance Company issued to G. W. Miracle an insurance policy for $500 on a residence which he was erecting in the city of Barbourville and which was nearing completion. On March 30, 1926, the Queen Insurance Company of America issued him a policy for $1,000 additional insurance on the building. Thereafter Miracle applied to the New Hampshire Fire Insurance Company for a policy of $2,000 covering the same structure, but the residence was destroyed by fire on May 23, 1926, and before this policy had been delivered to him.

Mr. Miracle did not make out proof of loss on forms furnished by the companies, but it is shown that they were notified of the loss by him or through their local agents. In response to the notice, they sent an adjuster to make investigation and adjustment. An agreement was reached between the adjuster and insured fixing the

damage at about $2,100 after making deduction for brick that might be salvaged from the ruins.

On August 6, 1926, Miracle instituted separate actions in the Knox circuit court against the three companies, seeking a recovery on the policies which had been delivered and also upon the one for which he applied but which had not been delivered. The action against the New Hampshire Fire Insurance Company was dismissed without prejudice. The other companies defended on the ground that the insured did not furnish them proof of loss in conformity with the provisions of the policies; that in violation of the provisions of the policies he had secured additional insurance on the building; that at the time the policies were issued there was a purchase-money lien on the lot and house of the insured of which the insurer had no knowledge; that later the property was further incumbered by a $2,000 mortgage; and that by reason of each and all of the enumerated violations of the provisions of the policies, they became null and void.

The cases were heard together, and at the close of plaintiff's evidence, the court sustained the motion of each of the defendants for a peremptory instruction. Plaintiff is here on appeal from judgments based on directed verdicts for the companies. The appeals have been heard together on the same record and will be disposed of in one opinion.

From an opinion appearing in the record we find that the motions for peremptory instructions were sustained on the theory that in each instance the insured had taken out additional insurance contrary to the express provisions of the policies. The policies forming the basis of these actions are identical in form, and on the first page thereof, forming an independent and complete sentence, are the words, ''Other insurance permitted.'' On the second page and under the heading, ''Stipulations, Conditions and Permits Forming Part of This Policy,'' and among other conditions is the following:

''This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy: . . .''

The construction placed upon the quoted provision and condition of the contracts virtually deletes the words, "Other Insurance Permitted," from the policies. We cannot agree or give our assent to such construction. If the provision on the face of the policy is subject to and controlled by the provision on the second page, then the draftsman of these contracts did a vain and senseless thing when the provision permitting other insurance was inserted, since the same ends would have been attained by omitting this provision and leaving the condition standing alone in the policy. It does not stand to reason that the companies would grant a permit on the first page only to nullify and render it meaningless by a proviso on the following page. Either other insurance is permitted without qualification or condition, or these contracts are couched in such conflicting and uncertain terms as to mislead and entrap the unwary and unsuspecting. It is beyond the limit of correct thinking to conclude that the companies would purposely frame their contracts in such a way as to mislead the insured. Conditions similar to or of the same import as that found on the second page have been universally recognized as being valid, and in many jurisdictions a breach of such conditions has been held to render a policy contract ipso facto void, while in many other jurisdictions it has been held that such breach renders the contract voidable only. Cooley on Insurance, vol. 3, p. 2852. Giving either construction to the condition is to hold it valid and to make a breach thereof a good defense to an action on the policy. In giving effect to and holding such condition to be valid, the courts have generally recognized it to be in harmony with a sound public policy against such overinsurance as might create a temptation to incendiarism or to render the insured careless and indifferent to fire hazards.

In framing these contracts, the companies must have known and understood that the condition inserted therein was valid and had been upheld by the courts, and if it had been the intention that the insured should not make or enter into contracts for other insurance without permission evidenced by subsequent endorsement added thereto, it was unnecessary to add the provision of the first page of the policy. Manifestly the words, "Other Insurance Permitted," should be given the only meaning of which they are susceptible and that without regard to the condition found on the second page. However, if any doubt

remained as to the soundness of our conclusions, then in view of the uncertainty and ambiguity of the language employed in the contracts, it would be our duty to follow a long-standing and well-established rule of construing the policies in favor of the insured and against the insurers who prepared them. Connecticut Fire Ins. Co. v. Roberts, 226 Ky. 534, 11 S. W. (2d) 148; General Accident, Fire & Life Assur. Corp. v. Louisville Home Tel. Co., 175 Ky. 96, 193 S. W. 1031, L. R. A. 1917D, 952; Ætna Ins. Co. v. Jackson, 55 Ky. (16 B. Mon.) 242; Phœnix Ins. Co. v. Spiers, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254.

Cases cited by counsel for appellees as supporting their theory that contracts may be avoided by reason of additional insurance taken without notice to the insurers are not in point here, as it appears that the court in those cases had under consideration a stipulation or condition against other insurance without any reference to a preceding provision permitting other insurance.

Even if we had adopted the lower court's construction of these contracts it would not necessarily follow that the $1,000 policy issued by the Queen Insurance Company would be either void or voidable, as the uncontradicted evidence discloses that the agent who took the application of the insured was informed and knew of the $500 policy previously issued to him. The knowledge of the agent who takes an application and delivers the policy is imputed to the company, and a provision against additional insurance without the consent of the company is waived if the agent had knowledge of the existing insurance at the time. Brumfield v. Union Insurance Co., 87 Ky. 122, 7 S. W. 893, 10 Ky. Law Rep. 13; National Union Fire Insurance Co. v. Forkner, 219 Ky. 119, 292 S. W. 765; South v. Philadelphia Fire & Marine Insurance Co., 217 Ky. 612, 290 S. W. 493.

While there is evidence that there was a $400 purchase-money lien on the lot on which this building was erected, it is not made to appear that insured purposely or otherwise concealed this fact. On the other hand, the evidence discloses that he was not asked anything about incumbrances on the lot. The companies cannot rely on this lien to defeat the policies when no inquiries were made about liens and no misrepresentations or fraud was practiced by appellant. Germania Fire Insurance Co.

v. Nickell et al., 178 Ky. 1, 198 S. W. 534, and cases cited therein.

It is affirmatively alleged in the answers in these cases that insured had, subsequent to the delivery of the policies, further incumbered the property with a $2,000 mortgage executed and delivered to the Louisville Title Company. This allegation is not sustained by proof, but, on the contrary, it is shown that the mortgage in question was upon other property owned by insured.

The insistence that appellant could not maintain his actions until he furnished proof of loss to the companies in accordance with provisions of the policy is without merit. The evidence discloses that they were notified of the loss and sent an adjuster who made an appraisal and agreed with appellant upon the amount of loss he had sustained. This coupled with their subsequent denial of all liability under the policies, and their refusal to pay the loss, waived that provision, and upon such refusal, appellant's right of action accrued. Home Insurance Co. v. Roll, 187 Ky. 31, 218 S. W. 471; Continental Casualty Co. v. Mathis, 150 Ky. 477, 150 S. W. 507; Phoenix Ins. Co. v. Flowers (Ky.) 124 S. W. 403.

In disposing of the questions presented by the record we have given no consideration to the matter of the $2,000 additional insurance for which appellant applied to the New Hampshire Fire Insurance Company, as there is no evidence that a contract for such insurance was ever completed.

Judgment reversed in each case, and causes remanded for new trial in conformity with this opinion.